UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00200-GNS-HBB

COACH, INC., et al.                                                                           PLAINTIFFS

v.

YAN CHEN, et al.                                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Summary Judgment (DN 41). The matter is ripe for adjudication. For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.  STATEMENT OF FACTS

In 2016, an investigator for Advanced Investigative Services, Inc. ("AIS"), a firm specializing in intellectual property investigations, visited Defendant Yan Chen ("Chen") at his business, Wholesale & Retail Market ("Wholesale Market"), in Cave City, Kentucky. (Pls.' Mot. Summ. J. Ex. 1, ¶¶ 2, 4, DN 41-1). In 2010, AIS had opened an investigation into Chen and his businesses after being advised he was selling counterfeit trademarked-labeled merchandise, some modeled after the products sold by Plaintiff Coach, Inc. ("Coach").[1] (Pls.' Mot. Summ. J. Ex. 1, ¶ 3). Coach has been an AIS client for many years and provided AIS investigators with specialized training in recognizing merchandise bearing counterfeit trademarks. (Pls.' Mot. Summ. J. Ex. 2, ¶¶ 3, 5, DN 41-2). President of AIS, Sean P. Dees ("Dees"), states that on May 25, 2016, the

---

[1] Plaintiff Coach, Inc., has changed its name to Tapestry, Inc., and Plaintiff Coach Services, Inc., has changed its name to Coach IP Holdings LLC, a wholly owned subsidiary of Tapestry, Inc. (Pls.' Notice Corporate Name Changes, DN 42). "Plaintiffs" and "Coach" will be used interchangeably for both throughout.

investigator reviewed Chen's merchandise, purchased several products, and determined they were counterfeit. (Pls.' Mot. Summ. J. Ex. 1, ¶ 4). The investigator then provided the products and supporting affidavits to agents for the United States Department of Homeland Security ("Homeland Security") later that day. (Pls.' Mot. Summ. J. Ex. 1, ¶ 4). AIS investigators routinely cooperate with law enforcement during their investigations of suspected counterfeiters. (Pls.' Mot. Summ. J. Ex. 1, ¶ 2). Homeland Security agents then obtained a warrant for Chen and his businesses, and the next day, AIS investigators Chris Dees ("Agent Dees") and Steven Bone ("Agent Bone") assisted agents in their execution of the warrants. (Pls.' Mot. Summ. J. Ex. 1, ¶ 5).

During their search, Homeland Security agents seized, photographed, and stored thousands of items of merchandise found at Wholesale Market. (Pls.' Mot. Summ. J. Ex. 1, ¶ 6). Of the items seized, Dees states that four hundred and sixteen bore Coach labels including: thirty-three belts, one hundred and thirty-seven hats, four purses, one hundred and thirty-four hard and soft emblems, one hundred and seven paired labeled soft emblems, and one pair of sunglasses. (Pls.' Mot. Summ. J. Ex. 1, ¶ 6). On May 27, Agents Dees and Bone assisted law enforcement as they executed a search warrant at a booth operated by Chen at Flea Land Flea Market in Bowling Green, Kentucky. (Pls.' Mot. Summ. J. Ex. 1, ¶ 7). Homeland Security agents seized, photographed, and stored fifty-six Coach labeled items, including: five bottles of perfume, twenty-six belts, eleven hats, one hundred and twelve pairs of sunglasses, one purse, and one wallet. (Pls.' Mot. Summ. J. Ex. 1, ¶ 7). AIS investigators, trained to identify counterfeit goods, inspected many of the items seized at Chen's booth and determined they were counterfeit. (Pls.' Mot. Summ. J. Ex. 1, ¶ 8).

Coach trademarks are valid and subsisting. (Pls.' Mot. Summ. J. Ex. 2, ¶ 9). Customers worldwide associate these trademarks with the Coach brand, and its high-quality production and

craftsmanship. (Pls.' Mot. Summ. J. Ex. 2, ¶ 4). Coach spends substantial time, money, and professional resources developing, promoting, and protecting its registered trademarks and brand. (Pls.' Mot. Summ. J. Ex. 2, ¶ 4). Karla Aspiras ("Aspiras"), Director and Senior Counsel at Coach, is responsible for maintaining corporate records concerning Coach's efforts combating the distribution of illicitly branded items, and supervises Coach's efforts in enforcing its trademarks, including the investigations undertaken by AIS in Kentucky and this litigation. (Pls.' Mot. Summ. J. Ex. 2, ¶¶ 2, 6). Aspiras is familiar with the events that transpired in May 2016 and states that Wholesale Market, Flea Land Flea Market, Chen, and Defendant Yan Chen, LLC, are not and never have been authorized to sell or offer for sale legitimately trademarked Coach products. (Pls.' Mot. Summ. J. Ex. 2, ¶¶ 6, 7). Coach's intellectual property witness has reviewed photographic and other evidence of the merchandise seized from Wholesale Market and Flea Land Flea Market. (Pls.' Mot. Summ. J. Ex. 2, ¶ 8). According to a report maintained by Coach, the intellectual property witness concluded the merchandise was not manufactured by Coach and was not authorized to display any registered trademarks. (Pls.' Mot. Summ. J. Ex. 2, ¶ 8).

On December 12, 2016, Coach sued Chen, individually and d/b/a Wholesale Market, and Yan Chen, LLC, for trademark infringement, trade dress infringement, trademark dilution and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, and 1125(a); copyright infringement under the United States Copyright Act, 17 U.S.C. § 501 *et seq.*; trademark infringement, unfair competition, and unjust enrichment under Kentucky common law, and unfair competition under Ohio law. (Compl. ¶ 1, DN 1). On May 17, 2017, Chen was indicted by federal authorities for his counterfeit-sale activities. *United States v. Chen*, No. 1:17-cr-00017-GNS-1. The Court stayed civil proceeding pending the disposition of Chen's criminal charges. (Order, DN 13). On January 8, 2021, Plaintiffs moved for summary judgment on liability, preserving

3

claims for statutory damages, against Defendants Chen, individually d/b/a Wholesale Market, and Yan Chen, LLC ("Defendants") for trademark infringement under § 1114(1)(a). (Pls.' Mot. Summ. J. 4). Defendants failed to respond.[2]

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *See id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

---

[2] "[F]ailure to object to evidentiary material submitted in support of a summary judgment motion constitutes waiver of those objections." *Johnson v. U.S. Postal Serv.*, 64 F.3d 233, 237 (6th Cir. 1995); *see also Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 613 n.3 (6th Cir. 2007) ("None of Powers's evidence satisfies the standards of Federal Rule of Civil Procedure 56 for evidence submitted in support of summary judgment. . . . Despite these glaring deficiencies, we may still consider Powers's evidence because the Public Defender did not object to its competence below . . . ." (citations omitted)); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). Plaintiffs could have bolstered Dees' affidavit with evidence supporting the business records exception to hearsay under Fed. R. Evid. 803(6) or by tendering the reports of AIS investigators, as is commonly done in these circumstances. *See, e.g., Coach, Inc. v. D & N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *3-4 (E.D. Mich. July 11, 2011) ("[T]he affidavit of investigator Henry appears to be made upon personal knowledge acquired through his own participation in the events described."). Dees only states he had personal knowledge of the matters as the President of AIS and that the activities occurred under his "direct supervision". (Pls.' Mot. Summ. J. Ex. 1, ¶¶ 3, 7). Regardless, "[c]ases contemplate a 'gross miscarriage of justice' exception to this waiver rule, [and] the Court perceives (and [Defendants, by their failure to respond,] identifies) no basis for that to apply here." *Atl. Specialty Ins. Co. v. Stanley*, No. 6:17-CV-308-REW, 2019 WL 669389, at *9 n.18 (E.D. Ky. Feb. 19, 2019), *aff'd*, No. 19-5259, 2019 WL 4440402 (6th Cir. Aug. 23, 2019) (using hearsay evidence).

### III. DISCUSSION

Plaintiffs move for partial summary judgment on their trademark infringement claim under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, which generally prohibits reproductions, copies, imitations, and counterfeits of registered marks in connection with the sale of any goods where such use will likely cause confusion. *See* 15 U.S.C. § 1114(a)(1); *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 425 (6th Cir. 2010). In relevant part, 15 U.S.C. § 1114 provides the following:

> Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). "A party establishes trademark infringement by showing (1) that it owns a trademark; and (2) that the infringer (a) used the mark without authorization, (b) in commerce, (c) in a manner likely to create consumer confusion." *Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 919 (E.D. Tenn. 2006) (citations omitted).

Failing to respond to Plaintiffs' motion for summary judgment, Defendants have not offered any facts or evidence to contest Plaintiffs' motion. Where a non-moving party fails to oppose a motion for summary judgment, then "summary judgment, if appropriate, shall be entered against" him. Fed. R. Civ. P. 56(e). The Court, however, may not merely accept the movant's statement of undisputed facts but, rather, must "satisfy itself that the evidence in the summary judgment record supports [the] relief." *Hitachi Med. Sys. Am., Inc. v. Branch*, No. 5:09-cv-1575, 2011 WL 3921718, at *12 (N.D. Ohio Sept. 7, 2011) (citation omitted).

Pursuant to 15 U.S.C. § 1115(a), registration of a mark creates a presumption of the mark's validity. *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes*, 871 F.2d 590, 593 (6th Cir. 1989). The Complaint identified and displayed Coach's registered trademarks. (Compl. 4-12).

Aspiras states the "trademarks that were identified and displayed in the Complaint . . . are valid and subsisting." (Pls.' Mot. Summ. J. Ex. 2, ¶ 9). "The statutory presumption shifts the burden of proof to the party challenging the validity of the mark." *Burke-Parsons-Bowlby Corp.*, 871 F.2d at 593 (citations omitted). "As there is no response from [Defendants] . . . to Coach's motion for partial summary judgment, no genuine issue as to this fact has been created." *Coach, Inc. v. Sw. Flea Mkt.*, No. 2:10-CV-02410-DKV, 2012 WL 8470191, at *5 (W.D. Tenn. Feb. 21, 2012), *aff'd sub nom. Coach, Inc. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013).

      Plaintiffs must next demonstrate "that [D]efendant[s'] mark creates a likelihood of confusion regarding the origin of the goods offered by [P]laintiff[s] and [D]efendant[s]." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 731 (6th Cir. 2012) (citation omitted). "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). When the infringing products are counterfeits, the likelihood of confusion is presumed. *See Sellers*, 411 F. Supp. 2d at 919; *Gen. Motors Corp. v. Autovation Techs., Inc.*, 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004). Upon the undisputed evidence presented, and in a light most favorable to Defendants, the merchandise sold and kept for sale by Chen was "counterfeit"— defined by the Lanham Act as "a spurious mark which is identical with, or indistinguishable from, a registered mark." 15 U.S.C. § 1127. It is also undisputed that counterfeit Coach products were used in commerce at Wholesale Market. As the products were counterfeits, they are presumed likely to cause confusion for consumers. Accordingly, Coach has established liability for trademark infringement.

6

Plaintiffs' uncontroverted evidence shows that Chen sold counterfeit Coach merchandise at Wholesale Market and at a booth he operated at the Flea Land Flea Market. Homeland Security also found merchandise at Chen's residence during its raid on him and his businesses, indicating he was involved in his businesses' operations. (Pls.' Mot. Summ. J. Ex. 1, ¶ 5). Significantly, there is no evidence indicating Chen was unaware of or uninvolved with these businesses, such that a reasonable juror could infer he was not personally involved in the actual trademark infringement.[3] *Cf. Coach, Inc. v. D & N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *3-4 (E.D. Mich. July 11, 2011) ("Although there is evidence indicating personal involvement, there is also evidence to support a jury determination that Bajocka was not personally involved in the infringement."). With respect to Yan Chen LLC, Plaintiffs have established that this entity "[is] not and never [has] been authorized to sell or offer for sale legitimately trademarked Coach products." (Pls.' Mot. Summ. J. Ex. 2, ¶ 7). They have not, however, produced any evidence showing that Yan Chen, LLC operated either Wholesale Market or the booth at Flea Land. To the contrary, as noted above, the record reflects Chen operated his businesses as a sole proprietorship. Thus, Plaintiffs have not established entitlement to judgment with respect to Yan Chen, LLC.

## IV.    CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (DN 41) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs

---

[3] Plaintiffs allege Chen was doing business as Wholesale Market. Dees' affidavit indicates Chen operated a sole proprietorship. Even if Wholesale Market were an incorporated entity, "[a]n individual corporate officer, director, owner, or employee can be liable for trademark infringement by the corporation where the individual is either personally involved in the infringement or is willfully blind to infringing activity." *Coach, Inc. v. D & N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *3-4 (E.D. Mich. July 11, 2011) (citation omitted). Similarly, "a corporate officer is liable for his own tortious acts, even if done for the benefit of the corporation." *Id.* (citing *See In re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir. 1985)). Thus, Chen is personally liable for Wholesale Market's trademark infringement.

are granted judgment on the issue of liability against Defendant Yan Chen, individually, but not against Defendant Yan Chen, LLC.

Greg N. Stivers, Chief Judge
United States District Court

April 30, 2021

cc:   counsel of record
      Defendants, *pro se*